JONES v SIMMONS

1. Partnership — Property — Ownership — Life Insurance — Proceeds — Statutes.

The Michigan Uniform Partnership Act provides that unless a contrary intention appears, property acquired with partnership funds is partnership property; however, a contrary intention is clearly indicated regarding life insurance policies where two partners named each other as beneficiaries of the policies even though the policies' premiums were paid from partnership profits, and the proceeds of such a policy properly belong to the surviving named beneficiary (MCLA 449.8[2]).

2. Partnership — Property — Ownership — Life Insurance — Proceeds — Statutes.

The Michigan Uniform Partnership Act provides that a partner's interest in the partnership is his share of the profits and surplus, and the same is personal property; a life insurance policy on the life of a partner is not an asset of the partnership where the premiums on the policy are paid from money which was already identified by the partners as "profit" and, therefore, the personal property of the partners, and where the named beneficiary of such a policy is the other partner, he is entitled to the proceeds (MCLA 449.26).

3. Partnership—Purchase—Partnership Debts.

A trial court properly credited against the purchase price only one-half of the expenses of a partnership incurred prior to the making of the purchase contract and borne by the contract purchaser where the purchaser was purchasing the one-half of the business owned by the surviving partner for herself, and where the other half interest was in the estate of her deceased husband.

4. Partnership—Purchase—Accounting to Purchaser.

The purchaser of one-half of a partnership enterprise is entitled to an accounting by the partner-seller where the purchaser is

References for Points in Headnotes

[1, 2] 60 Am Jur 2d, Partnership §§ 94, 254, 279.
[3, 4] 60 Am Jur 2d, Partnership §§ 136–138.

the wife of a deceased partner and is purchasing the one-half interest in her own right and not on behalf of the estate of her husband and where, therefore, the transaction is not one between partners.

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 February 13, 1973, at Detroit. (Docket No. 12150.) Decided June 25, 1973.

Complaint by Freddie Jones, Jr., against Alneta Simmons for an accounting from the defendant and for other equitable relief in winding up a partnership. Defendant counterclaimed for an accounting between the parties. Accounting denied. Judgment for plaintiff. Defendant appeals. Affirmed in part, reversed in part.

*Peter P. Cobbs,* for plaintiff.

*Jerry L. Dixon,* for defendant.

Before: V. J. Brennan, P. J., and Holbrook and Van Valkenburg,* JJ.

V. J. Brennan, P. J. Plaintiff, Freddie Jones, Jr., and Walter Z. Simmons entered into a partnership agreement on September 26, 1960; the partnership was formed for the purpose of carrying on a drug, sundry, and package liquor store. This partnership continued until the death of Walter Z. Simmons on May 5, 1966. The deceased left his one-half interest in the partnership to his widow, Mrs. Alneta Simmons, the defendant herein. Plaintiff continued to run the business, in an effort to wind it up, from the date of his partner's death until September 13, 1967.

During the period in which the plaintiff was

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

winding up the business of the partnership, the parties met on several occasions to attempt to place a value on the business, and to negotiate a purchase-sale between them. In the middle of July, 1967, Mr. Jones offered to sell his interest in the partnership to Mrs. Simmons for $17,000. A written sales contract to that effect was executed between the parties on September 13, 1967. Mrs. Simmons was acting in her own behalf, and not as executrix of her husband's estate.

Plaintiff commenced this action in December of 1968, alleging delay by the defendant in performing the agreement. Plaintiff sought recision of the purchase agreement, forfeiture of defendant's deposit, the appointment of a receiver and an accounting from the defendant of all of the transactions of the enterprise from September 13, 1967, to the present. The defendant answered, put in issue the disposition of the proceeds of an insurance policy on the life of Simmons, the allocation of certain liabilities incurred by the enterprise prior to September 13, 1967, and sought an accounting of the enterprise from the date of her husband's death.

The trial court held that the plaintiff need not give an accounting to the defendant, that certain liabilities incurred prior to defendant's purchase of plaintiff's share of the enterprise be prorated, and that plaintiff was entitled to the proceeds of the insurance policy on the life of decedent. Defendant on appeal urges that these three holdings were erroneous.

Defendant's first argument on appeal regards the distribution of the proceeds of the policy of insurance on the life of her husband. She alleged that the premiums on the policy were paid from partnership assets, and that therefore the proceeds of the policy should go not to plaintiff Jones, but to

the enterprise.[1] In the trial of this matter Mr. Jones testified regarding this policy as follows:

> *"Q. [By defendant's counsel]:* Now, how much was that life insurance policy?
>
> *"A. [Mr. Jones]:* Ten thousand dollar life insurance policy.
>
> *"Q.* And was there a life insurance policy upon your life?
>
> *"A.* That's correct.
>
> *"Q.* In which Mr. Simmons was the beneficiary?
>
> *"A.* That's correct.
>
> *"Q.* How much was that?
>
> *"A.* Ten thousand dollars.
>
> \*    \*    \*
>
> *"Q.* And after Mr. Simmons' death, did you collect the $10,000?
>
> *"A.* Yes.
>
> \*    \*    \*
>
> *"Q.* Now, how were the premiums on these insurance policies paid?
>
> *"A.* Each was paid from draws.
>
> *"Q.* Will you explain that a little bit more, what you mean by 'draws'. I don't know.
>
> *"A.* Well, we—
>
> *"Q.* You mean—excuse me—let me express myself. You mean that each individual paid his premium?
>
> *"A.* I paid both of them.
>
> *"Q.* You paid both of them?
>
> *"A.* Yes, sir.
>
> *"Q.* And where did the money come from that paid it?
>
> *"A. Came out of the profits of the store.*
>
> *"Q.* And now, one more question. When were these insurance policies taken out? Were they taken out before you entered into the partnership, or afterward?

---

[1] The parties do not argue, either in the court below or here, that plaintiff's use of the funds should be limited to the purpose of purchasing decedent's share of the partnership. *(See* Anno 83 ALR2d 1347.) This question is therefore not before this Court, and nothing in this opinion should be construed as bearing on that issue.

"*A.* These were taken out three or four years after the partnership.

"*Q.* After you had entered into the partnership agreement with Mr. Simmons?

"*A.* Yes, sir.

"*Q.* Now, no part of this money has been turned over to the estate of Mr. Simmons at all, has it?

"Mr. Cobbs *[Plaintiff's counsel]:* What money?

"Mr. Dixon: From the life insurance policy that you *(indicating to witness)* collected.

"*Witness:*

"*A.* The estate was not a beneficiary.

*Mr. Dixon continuing:*

"*Q.* All we want to establish is that nothing has been turned over.

"*A.* No, sir." (Emphasis supplied.)

The defendant's position is that since the premiums were paid from "partnership profits" the proceeds of the policy are an asset of the partnership. We disagree. The plaintiff's testimony indicates that the premiums were regarded as coming from the "profit" of the partnership, and were not regarded by the partners as an expense of maintaining the enterprise. The Michigan Uniform Partnership Act provides, in pertinent part, "Unless the contrary intention appears, property acquired with partnership funds is partnership property; * * * ". MCLA 449.8(2); MSA 20.8(2). The partners, by naming each other as beneficiaries of the policies, clearly indicated a "contrary intention". Furthermore, that act also provides: "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property". MCLA 449.26; MSA 20.26. Thus, since the premiums on the policies were paid from money which was already identified by the partners as "profit", the premiums were therefore paid from the personal property of the partners, and

the policy is therefore not an asset of the partnership. The trial court correctly held that the plaintiff was entitled to the proceeds of the policy.

Defendant's second argument is that expenses borne by her, which were in fact incurred prior to her purchase of plaintiff's share of the enterprise should be credited in full against the outstanding balance due plaintiff under the contract of sale. The trial court allowed defendant a credit of one-half of the sum of such expenses toward that balance. The defendant's position is not well taken. What she purchased from the plaintiff was one-half of the business. The remaining one-half of those expenses are properly chargeable against the other partner in the business, to wit: the estate of Walter Simmons. The holding of the trial court in this matter is also affirmed.

Defendant's third argument is that the trial court erred by failing to require the plaintiff to account to the estate of Walter Simmons for the conduct of the business from the date of Simmons' death until the date of the sale. The trial court denied an accounting relying on *Cookes v Lymperis,* 178 Mich 299, 303–304 (1913). In that case, one partner conveyed his interest in the partnership to the other. The Court therein held that there was no longer a right to an accounting.

"According to the testimony of both of these parties a new contract was entered into by which plaintiff closed out and transferred all his right, interest, and title in the business to defendant and simply became a creditor of the purchaser. Neither thereafter was entitled to any accounting."

We believe the trial court misapplied the law. Had the estate purchased the interest of the plaintiff, the holding of *Cookes, supra,* would apply. How-

ever, Mrs. Simmons purchased in her own right, and not on behalf of the estate. Therefore, since it was in effect the estate which was the partner of Mr. Jones, this was not a transaction between partners as in *Cookes.* The defendant is entitled to an accounting.

Affirmed in part, reversed in part, remanded for further proceedings not inconsistent with this opinion.

All concurred.